**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **LUCIEN J. TUJAGUE, JR.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **CIVIL ACTION NO. _______________** |
| | § | |
| | § | |
| **JOHN ECKERD,** | § | |
| **LA MIA BELLA FAMIGILIA, LP,** | § | |
| **HO PROVATO LLC,** | § | |
| **IMAGINOMICS LLC,** | § | |
| **TRIDENT LAKES PROPERTY** | § | |
| **HOLDINGS, LLC,** | § | |
| **LANDASH TX, LLC** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE AMOS MAZZANT:

NOW COMES Plaintiff, LUCIEN J. TUJAGUE, JR. and files this his Plaintiff's Original Complaint against JOHN ECKERD, LA MIA BELLA FAMIGLIA, LP, HO PROVATO LLC, IMAGINOMICS LLC, TRIDENT LAKES PROPERTY HOLDINGS, LLC and LANDASH TX, LLC.

**I.**

**PARTIES AND SERVICE**

1. Plaintiff is a citizen of the United States, the State of Texas, and a resident of Dallas County, Texas.

2. Defendant JOHN ECKERD is a resident of Collin County, Texas, and may be served with process by serving him at his home address of 1805 Provine Court, McKinney,

Collin County, Texas 75070, or wherever he may be found.

3. Defendant LA MIA BELLA FAMIGLIA, LP is a limited partnership with a principal place of business at 1801 Provine Court, McKinney, Texas 75070, and may be with process by serving its general partner JOHN ECKERD at 1805 Provine Court, McKinney, Collin County, Texas, or wherever he may be found, or by serving its registered agent Zachary R. Burd, Law Offices of Zachary Burd, 4901 LBJ Freeway, Dallas, Texas 75244, or wherever he may be found.

3a. Defendant HO PROVATO LLC is a general partner for LA MIA BELLA FAMIGLIA, LP is a limited liability company partnership with no stated principal place of address, and may be with process by serving its manager JOHN ECKERD at 1805 Provine Court, McKinney, Collin County, Texas, or wherever he may be found, or by serving its registered agent Zachary R. Burd, Law Offices of Zachary Burd, 4901 LBJ Freeway, Dallas, Texas 75244, or wherever he may be found.

3b. Defendant IMAGINOMICS LLC is a general partner for LA MIA BELLA FAMIGLIA, LP is a limited liability company partnership with no stated principal place of address, and may be with process by serving its manager JOHN ECKERD at 1805 Provine Court, McKinney, Collin County, Texas, or wherever he may be found, or by serving its registered agent Zachary R. Burd, Law Offices of Zachary Burd, 4901 LBJ Freeway, Dallas, Texas 75244, or wherever he may be found.

4. Defendant TRIDENT LAKES PROPERTY HOLDINGS, LLC is a limited liability company with the principal place of business at 1805 Provine Court, McKinney, Collin County, Texas 75070 and may be served with process by serving its managing member JOHN ECKERD at 1805 Provine Court, McKinney, Collin County, Texas, or wherever he may be

found, or its registered agent for process United States Corporation Agents, Inc., 9900 Spectrum Drive, Austin, Texas 78717.

5. Defendant LANDASH TX, LLC is Texas limited liability company, and may be served with process by serving its managing member LA MIA BELLA FAMIGLIA, LP is a limited partnership with a principal place of business at 1801 Provine Court, McKinney, Texas 75070**,** which may be served with process by serving its general partner JOHN ECKERD at 1805 Provine Court, McKinney, Collin County, Texas, or wherever he may be found, or by serving its registered agent Zachary R. Burd, Law Offices of Zachary Burd, 4901 LBJ Freeway, Dallas, Texas 75244.

## JURISIDCTION

6. The action arises under Title 18 U.S.C. § 1962.

7. This Court has jurisdiction under these claims pursuant to Title 28 U.S.C. §§ 1331, and 1367

## VENUE

8. Venue is proper in that the Defendant resides in the Eastern District of Texas, and that some of the events made the basis of this suit occurred there, and that real property that is the subject of this action is likewise located there. Title 28 U.S.C. § 1391(b)(1), (b)(2).

## NATURE OF ACTION

9. This action arises from a series of violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), fraud and fraudulent conveyances. Title 18 U.S.C. § 1962.

## CONDITIONS AND PRECEDENTS

10. All conditions precedent to jurisdiction have occurred or been complied with.

## II.

## FACTS

### CO-CONSPIRATOR LURES PLAINTIFF TO INVEST $12.9 MILLION IN MINING AND INDUSTRIAL TIRE BUSINESS

11. Plaintiff LUCIEN J. TUJAGUE, Jr. is a Dallas businessman, and investor. In late 2015, Plaintiff is introduced to JASON ADKINS, a resident of Ohio, through a mutual acquaintance. Based on a number of representations Adkins made to him about his skills, knowledge, and relationships in the sale of "Off the Road" (OTR) tires, massive specialized tires employed on mining, construction, and industrial sites, Plaintiff and Adkins began communicating about Plaintiff investing in enterprises related to the acquisition and sale of the tries. OTR tires are gigantic tires specially designed for heavy mining and industrial applications and are commonly seen on "Mega" Truck manufactured by companies, like Caterpillar. Because of their massive size, and specialized use they can sell for anywhere between $35,000 to $100,000. As a result of the substantial expense of the tires, and the unpredictable timing and duration of their use at a particular work site, there is a substantial secondary brokerage between users and wholesale distributors. It was this market that Adkins had enticed Plaintiff, who had had great success in the energy and real estate businesses, but was completely new to this market, to invest in the OTR tire business.

### PLAINTIFF INVESTS $12.9M AS ADKINS CONTINUES TO TRAP HIM

12. Following Adkins's solicitations to Plaintiff here in Texas, over the two years that followed, Plaintiff invested, at least, $12,920,550.00 in some forty transactions. The first

transaction occurred on **February 18, 2016** and the last occurred on or about **November 14, 2017**. Plaintiff's payments were drawn from electronic wires from his bank in Dallas County, Texas.

13. As the information was presented to Plaintiff, Adkins would apprise him of one or more deals by phone or email. The information would identify the supplier of the tires, and the end consumer, often a mining or construction firm. Adkins would also identify any other potential investors in the transaction. Adkins would often suggest to Plaintiff that he could cover the entire transaction, so that others "wouldn't be able to get in on the deal."

14. Adkins would provide proof that he had already acquired the tires thus causing Plaintiff to wire funds to Adkins through his Landash Corporation. What Plaintiff did not know, though, was that the money and/or the proceeds of transactions were being diverted to Adkins and his co-conspirators. During this period, the 38-year-old Adkins had virtually daily communications with Plaintiff. Adkins solicited his friendship, flying him on planes that Adkins asserted he owned, introducing him to associates, and allowing him to inspect tire inventories at the Houston XPO location. Adkins further lured Plaintiff into his trust by inviting Plaintiff to his home in Ohio, and to Cleveland Cavalier basketball games, among other outings and events.

**LANDASH AND ADKINS GO BANKRUPT**

15. In the summer of 2017, Adkins began communicating with Plaintiff through his attorney. Adkins and the attorney urged to Plaintiff that the bankruptcy will not affect Plaintiff's investments. On January 22, 2018, Landash files a Chapter 11 Bankruptcy in the Southern District of Ohio in Cause No. 2:2018-BK-50300. Only weeks later on February 9, 2018 Adkins files his own Chapter 7 bankruptcy in the Southern District of Ohio, as well, in 2:2018-BK-50671.

**ADKINS TAKES THE 5TH AND TRUSTEE TAKES DEFAULT JUDGMENT**

16. In only weeks, it is soon apparent that the bankruptcy too is a sham. At an initial hearing of his own bankruptcy, Adkins appears only by phone, asserting a dubious ailment. He then repeatedly invokes his privilege against self-incrimination. He subsequently fails to cooperate with the bankruptcy trustee. On June 1, 2018, the bankruptcy trustee moved for default in an adversarial proceeding against Adkins. It soon becomes apparent that many of the transactions were elaborate contrivances that was one part Charles Ponzi, and one part Billy Sol Estes. In those instances where tires were actually acquired, they were not delivered to the end users. Plaintiff did not receive any of his $12.9 million, much less than the large gross profits anticipated from more than $75 million in total tire sales.

**WHERE THE MONEY WENT**

17. Through various shell companies, Adkins, and Defendant Eckerd[1] controlled Landash Corporation, and its related entities, including LANDASH TX, LLC. Plaintiff has since learned that following a number of transactions, portions of funds sent to Landash or Adkins were then delivered to Eckerd. **Exhibit "A," Schedule of Wires.** Adkins and Eckerd have, furthermore, an established pattern of defrauding creditors in relation to tire transactions:

a. ***Case Pro-logistics Forwarding LTD. v. Robison Tire Co., Inc.*** **Civil Action No. 2:13-CV-83, U.S. District Court, Southern District of Mississippi—Hattiesburg Division.** This action was filed on or about April 25th, 2013 and based on a transaction that occurred on or about November 20, 2012. In the action, John Eckerd and Jason Adkins were described as known associates that purported to sell and offer tires for Defendant Robison Tire Co, Inc to resale to

---

[1] The organized nature of this conspiracy stretches back to 2010 and continues forward to the present. In other litigation filed by Abington Capital, Defendant Eckerd expressly represents himself as an officer and employee of the defendant who works with Jason Adkins and again receives a multi-million dollar loan for the acquisition of tires located here in Texas, but which did not and do not exist.

among other prospective buyers Giant Tyres, LLC. The Plaintiff lent in excess of $1 million to Robison to finance the transaction. Throughout the case, and based of the efforts of Defendant Eckerd's and Jason Adkins's attorney Mr. Tim Parlatore, it became clear that they never in fact intended on providing the tires that were the subject matter of the loan to Defendant Robison.

b. ***Star Funding v. Vault Minerals, et al.*****, Civil Action No. 1:15-CV-3026, U.S. District Court, Southern District of New York (Foley Square).** This action had the same fact pattern as *Case Pro-Logistics.* This case was filed on April 17, 2015, while the transaction underlying the basis for the suit is September 6th, 2013. Here, once again the Plaintiff creditor sues parties for failure to repay a loan to purchase tires. However, after the initiation of the suit, the Defendant Vault Tires claims that they never received the tires they intended on purchasing from the middlemen, Adkins and Eckerd. Compounding the fraud, Defendant Delinges in a later fling in Dallas Federal court attempted to have Mr. Adkins appointed as a auctioneer/ broker for the liquidation of tires for his company.

**ECKERD DIVERTS FUNDS TO SELF AND TRIDENT LAKES**

18. With his share of the ill-gotten gains from Landash and Adkins, Eckerd diverts the money to other entities he controls and makes a number of real property purchases, including the following "Trident Lakes" properties:

| Address | Tax Appraisal | Date of Acquired |
|---|---|---|
| CR 1245 Ector, Tx 75349 (118.4 Acres) | $331,460 | September 18, 2017 |
| CR 1245 S of Ector, Tx 75349 (456.64 Acres) | $1,278,300 | September 18, 2017 |
| 7132/7138 Hwy 56, Ector, Tx 75349 (84 acres) | $728,150 | September 18, 2017 |

He further continues to enrich himself by applying funds taken from Plaintiff to the two residential properties where he also maintains his businesses. Those properties are 1801 and 1805 Provine Court, McKinney, Collin County, Texas 75070.

**TRIDENT LAKES MONEY LAUNDERING SCHEME**

19. Beginning in 2016, Eckerd and others began promoting their "five star DEF CON 1" resort, an extravagant 700-acre resort community in Ector, Fannin County, Texas. Featured in national and local media, the $320 million Trident Lakes development was promoted as a

doomsday getaway for the rich. *See, e.g.,* "A Resort for the Apocalypse: Texas's Trident Lakes is the latest entry in a booming market for luxury bunkers," *Altantic Monthly,* March 2017; "A Home of Last Resort, *Texas Monthly,* May 2017, *https://www.texasmonthly.com/the-edge/dispatch-from-ector-a-home-of-last-resort/.* Trident Lakes would feature "eighteen-hole golf course, a 100,000-square-foot equestrian center, polo fields, gun ranges, tennis courts, and a community center connected to the bunkers via an underground network of tunnels." *Texas Monthly, infra.* There were likewise plans for helipads, and perhaps a runway long enough for private jets to land.

20. Despite the grand vision of this escape from everything from domestic terrorism to nuclear war, the development served as a cover for Eckerd's criminal enterprise. Purchasing Trident Lakes proceeds stolen from Plaintiff, Eckerd subsequently expanded the scope of his criminality by using the development to launder money for reputed drug traffickers.

21. On March 8, 2018, the Federal Bureau of Investigation Jersey filed a criminal complaint alleging that Eckerd, and an unnamed conspirator—who may also be another conspirator in the Adkins fraud—agreed in several electronically recorded conversations to proceeds from Columbian drug trafficking. **Exhibit "B," Criminal Complaint, Cause No. 2:18-mj-03556, *United States of America v. John Eckerd,* U.S. District Court of New Jersey.**

22. What Eckerd and his co-conspirator believed to be traffickers, though, were, in fact, undercover FBI agents.

23. On March 8, 2018, contemporaneous with the filing of the criminal complaint, Eckerd agreed to forfeit to the U.S. Government of his residence at 1801 Provine Court, McKinney Texas. **Exhibit "C," Agreement to Forfeit Property.** Valued at more than $2 million the forfeited property sits immediately next door to another of Eckerd's residential

properties, but also the principal place of business for Trident Lakes Property Holdings. This forfeiture was executed as a condition of the $100,000 bond Eckerd posted in the criminal action. **Exhibit "D," Order Setting Conditions of Release.** Defendant Eckerd was permitted to execute a lien asserting his interest in the property within two weeks of the forfeiture order. Upon information and belief, this new lien was executed subsequent to his theft and fraudulent transfer of Plaintiff's property to enrich himself, and transferees under his control.

24. On May 8, 2018, the criminal matter was continued until July 15, 2018 so that Eckerd and the United States may conduct discovery, and plea negotiations. **Exhibit "E," Order for Continuance.**

25. As a result of Defendant's criminal conduct, and the insolvencies he has caused, Plaintiff's risk of imminent and irreparable losses remain.

## III.

## CAUSES OF ACTION

### A. FEDERAL CLAIMS

### RICO CONSPIRACY

26. Plaintiff realleges, and incorporate the allege the facts previously stated. Plaintiff expressly pleads caused of action pursuant to the Racketeer Influenced Corrupt Organizations Action. *See* Title 18 U.S.C. § 1962(a)-(d). The evidence and facts adduced establish that (1) John Eckerd with and through his corporate entities and with other co-conspirators, including but not limited to Jason Adkins, and an unnamed co-conspirator has (2) engaged in a pattern of racketeering activity (3) connect to the acquisition, establishment, conduct, or control of an enterprise.

27. Eckerd's pattern of criminal conduct include the following:

a. Committing wire fraud in some 40 different transactions (13 U.S.C. § 1343);

b. Committing conspiracy to commit wire fraud in some forty different transactions (18 U.S.C. § 371);

c. Fraudulently claiming an interest in one or more parcels of real property, including:

  a. Trident Lakes Parcels

    i. CR 1245 Ector, Fannin County, Tx 75349 (118.4 Acres)

    ii. CR 1245 S of Ector, Fannin County, Tx 75349 (456.64 Acres)

    iii. 7132/7138 Hwy 56, Ector, Fannin County, Tx 75349 (84 acres)

  b. 1801 Provine Court, McKinney, Tx

  c. 1805 Provine Court, McKinney, Tx

d. Laundering money and conspiring to launder money through one or more of his enterprises (18 U.S.C. § 1956), including but not limited to Trident Lakes Real Estate Holdings, including each of the following specific acts enumerated by the Federal Bureau of Investigation.

e. Violating state penal and common law statutes, by and through, the transfers identified. *See* Tex. Pen. Code § 31.05, and Tex. Civ. Prac. & Rem. Code § 134.005; *see further below* ("TUFTA") Texas Business and Commerce Code Sections 24.005 and 24.006.

f. Previous Ponzi and creditor schemes, as identified, with Adkins and other co-conspirators.

**B. PENDENT STATE CLAIMS**

**TEXAS THEFT LIABILITY ACT**

28. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendants. Plaintiff specifically pleads all causes of action arising from the Texas Theft Liability Act.

## CONSTRUCTIVE TRUST

29. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendants. Defendants were officers, agents, and employees of Landash Corporation and Landash Tx LLC. Plaintiff was a joint venturer with Landash Corporation and Adkins. Defendants breached duties owed to Landash's joint venturer, Plaintiff. These breaches injured Plaintiff, benefitted Defendants, and unjustly enriched Defendants. The funds pertaining to these breaches and fraud are traceable and identifiable.

## CONVERSION

30. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendants. Plaintiff owned, possessed, or had the right of immediate possession of property—namely the funds wired and/or the proceeds from the profits of the sales tires from the income and funds obtained from tire transactions. Defendants wrongfully exercised dominion or control over the property; and Plaintiff suffered injury.

## FRAUDULENT TRANSFER

31. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendants. The above-described acts constitute one or more fraudulent transfers or conveyances of Plaintiff's assets by or to Defendants. In an effort to shield Plaintiff's assets

from Plaintiff's lawful abilities to collect a judgment, Defendants fraudulently transferred Plaintiff's and Landash Corporation's assets and cash to Defendants. Defendants received such assets in fraud on Plaintiff and took some or all of the benefits derived from those transfers and assets. As such, Defendants are also "transferees" under the Texas Uniform Fraudulent Transfer Act ("TUFTA"). Through the fraudulent transfers, Defendants caused Landash Corporation to become insolvent and unable to pay its obligations as they became due, or deepened its preexisting insolvency.

32. Plaintiff's claim as a defrauded party arose before, and its claim, within a reasonable time after of Defendants' fraudulent transfers. The transfers were a fraud against Plaintiff's rights because:

- the transfers were made by Defendants with the actual intent to hinder, delay, or defraud Plaintiff and Landash's other creditors; or

- the transfers were made by Defendants without Landash receiving reasonably equivalent (or any) value in exchange for the property, rights, and assets transferred;

- Landash was insolvent when the transfers were made or became insolvent as a result of them (given its prior and continued failure to pay its bills); and/or

- Defendants caused Landash to make the transfers to one or more insiders (Eckerd, La Mi Bella Familigia, Trident Lakes Property Holdings) as that term is used by statute;

Defendants' actual intent to hinder, delay, or defraud Plaintiff and other creditors is evident in that the allegations support that the following badges of fraud are present here:

- The transfers were to insiders;
- the transfers were concealed;
- the transfers comprised substantially all of Landash's assets, leaving it a

shell company without contracts, a supply chain, or revenue, and with a mountain of debt;

- Defendants caused Landash to remove or conceal assets by transferring them to Defendants, as insiders;

- Neither Plaintiff nor Landash did not receive reasonably equivalent value (or apparently any) for the transfers;

- Landash was insolvent at or shortly after the transfers, as shown by its inability to pay the note underlying the judgment, or its bills and taxes, as they came due; and

- The transfers occurred shortly before and after a substantial debt was incurred.

33. Accordingly, Defendants have violated Texas Business and Commerce Code Sections 24.005 and 24.006. Defendants transferred certain assets that are, in reality, controlled by Plaintiff, all in fraud upon Plaintiff. Trident Lakes Property Holdings is at least a transferee of those fraudulent transfers and took neither in good faith (because Trident Lakes Property Holdings is controlled by insider John Eckerd, who caused the fraudulent transfers) nor for reasonably equivalent value (as the assets were just given away).

**FRAUDULENT LIEN**

34. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendants. In conjunction with his order of release, Defendant executed a lien interest against 1801 Provine Court in violation of Plaintiff's interest in the property.

**NEGLIGENCE AND GROSS NEGLIGENCE**

35. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendants. Defendants were officers, agents, and employees of Landash

Corporation and Landash Tx LLC. Plaintiff was a joint venturer with Landash Corporation and Adkins. As a result, Defendants owed a duty of reasonable care to Plaintiff. In the course and scope of managing funds received by Landash, Defendants engaged in a series of negligent, careless, irresponsible, and criminal accounting practices. These acts and omissions proximately caused injuries to Plaintiff.

**CONSPIRACY, AIDING AND ABETTING AND JOINT AND SEVERAL LIABILITY**

36. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendants. Defendants conspired with Jason Adkins, and other entities and individuals to defraud Plaintiff. Defendants engaged in a pattern of criminal conduct, and committed one or more overt acts to deprive Plaintiff of more than $12 million, and employ these valuable resources for their own exclusive enrichment. As a result of this criminal conspiracy, Plaintiff expressly pleads that Defendants are jointly and several liable for Plaintiff's losses caused by them, and third-party co-conspirators, including Jason Adkins, and others.

**ALTER EGO AND PIERCING THE CORPORATE VEIL**

37. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendants. At all points relevant to this litigation—namely from on or before February 18, 2016 to the present day—Eckerd operated through sham entities, which were nothing more than sham corporations intended to conceal his frauds. Throughout this litigation, such entities were undercapitalized, or kept otherwise insolvent, while Defendant Eckerd, and others failed to adhere to the requisite formalities concerning the corporate form for the respective entities. Plaintiff expressly pleads alter ego and piercing the corporate veil.

**DAMAGES AND REMEDIES**

38. Plaintiff realleges and incorporates all previously stated facts for this cause of action against Defendants. As a result of the acts of Defendants, Plaintiff has suffered economic damages. Plaintiff alleges that Plaintiff thus seeks

- Actual damages;
- Exemplary damages;
- RICO treble damages;
- Attachment of real property acquired with Plaintiff's converted funds;
- Seizure of chattels acquired with Plaintiff's converted funds;
- avoidance of the transfers to the extent necessary to satisfy Plaintiff's claim;
- attachment or other provisional remedy against the assets fraudulently transferred or other property of Defendant(s);
- an injunction against further disposition of the assets fraudulently;
- transferred or of other property, by Defendant(s) or another transferee, or
- appointment of a receiver to take charge of the asset(s) fraudulently;
- judgment against Defendants, jointly and severally;
- attorneys' fees pursuant to the RICO Act, TUFTA, and the TTLA;
- costs of court;
- pre-judgment interest; and
- and any relief to which Plaintiff is justly entitled.

39. Plaintiff demands a trial by jury.

Respectfully submitted,

**HENLEY & HENLEY, P.C.**

By: /s/ Geoff J. Henley
Geoff J. Henley
State Bar No. 00798253
2520 Fairmount, Suite 200
Dallas, Texas 75201
Telephone Number: (214) 821-0222
Facsimile Number: (214) 821-0124

**ATTORNEYS FOR PLAINTIFF**
**LUCIEN J. TAJAGUE, JR.**