# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| LUCIEN J. TUJAGUE JR., § <br> § <br> v. § Civil Action No. 4:18-CV-00408 <br> § Judge Mazzant <br> § <br> JOHN ECKERD, LA MIA BELLA § <br> FAMIGILIA, LP, TRIDENT LAKES § <br> PROPERTY HOLDINGS, LLC, HO § <br> PROVATO LLC, IMAGINOMICS LLC, § <br> LANDASH TX, LLC, § | |

## MEMORANDUM OPINION AND ORDER

On June 14, 2018, Plaintiff Lucien Tujague filed an ex parte Motion for Temporary Restraining Order and Expedited Discovery (Dkt. #4). That same day, the Court granted Plaintiff's motion (Dkt. #7). On June 28, 2018, the Court conducted a preliminary injunction hearing. At the conclusion of the hearing, the Court found that a preliminary injunction was warranted. As such, the Court issues this Order to formalize its ruling.

## BACKGROUND

From on or about February 18, 2016 to November 14, 2017, Plaintiff invested approximately $12.9 million in the acquisition and sale of "Off the Road" tires.[1] Unbeknownst to Plaintiff, Defendants[2] fraudulently diverted Plaintiff's invested funds into various shell companies, entities, and other assets. As a result, on June 11, 2018, Plaintiff filed suit against Defendants asserting the following claims: (1) Racketeer Influenced Corrupt Organizations Action ("RICO"); (2) Texas Theft Liability Act ("TTLA"); (3) Constructive Trust; (4) Conversion; (5) Fraudulent

---

[1] "Off the Road" tires include massive sized tires designed for heaving mining and industrial applications.
[2] The term "Defendants" includes John Eckerd, La Mia Bella Famigilia LP, Trident Lakes Property Holdings LLC, Ho Provato LLC, Imaginomics LLC, and Landash TX LLC.

Transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"); (6) Fraudulent Lien; (7) Negligence; (8) Gross Negligence; (9) Conspiracy; (10) Aiding and Abetting; and (11) Alter Ego and Piercing the Corporate Veil (Dkt. #1) . On June 14, 2018, Plaintiff filed, and the Court granted, Plaintiff's ex parte Motion for Temporary Restraining Order and Expedited Discovery (Dkt. #4; Dkt. #7). Subsequently, on June 28, 2018, the Court held a preliminary injunction hearing. Notably, Defendants failed to appear. After considering the evidence and argument of Plaintiff, the Court finds that a preliminary injunction is warranted.

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

Plaintiff alleges that a preliminary injunction is justified in this case because all four elements are satisfied. As noted above, Defendants failed to appear at the preliminary injunction hearing or oppose Plaintiff's requested relief. The Court proceeds through its analysis making

note of Defendants' failure to oppose or offer evidence in opposition to Plaintiff's request for a preliminary injunction.

**I. Likelihood of Success on the Merits**

To prevail on his motion for preliminary injunction, Plaintiff must demonstrate a substantial likelihood of success on the merits. This requires a movant to present a prima facie case. *Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011)). A prima face case does not mean Plaintiff must prove he is entitled to summary judgment. *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009). As explained above, Plaintiff asserts claims for violations of RICO, state statutes, and common law related to theft and fraud. The Court finds that if Plaintiff were to prevail on its RICO and/or TUFTA claim, the same remedy—a preliminary injunction—would be warranted. Accordingly, the Court need not address all claims asserted by Plaintiff. *See Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F. Supp. 3d 604, 636 (M.D. La. 2015), *aff'd*, 862 F.3d 445 (5th Cir. 2017); *A.T.N. Indus., Inc. v. Gross*, 4:14-cv-02743, Dkt. #43 at p. 40 (S.D. Tex. Nov. 26, 2014), *aff'd*, 632 F. App'x 185 (5th Cir. 2015).

**a. RICO**

Plaintiff asserts a cause of action under RICO. Specifically, Plaintiff alleges violations of 18 U.S.C § 1962(a)–(d). *See* (Dkt. #1 at ¶¶ 26–27).

"RICO creates a civil cause of action for '[a]ny person injured in his business or property by reasons of section 1962.'" *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 406 (5th Cir. 2003) (alteration in original) (quoting 18 U.S.C. § 1964(c)). Common elements required to prove a violation of a subsection of § 1962 include: "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct or control of an

3

enterprise." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)). The Court addresses each element in turn.

A "person" within the meaning of RICO "includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). Describing the definition as "very broad," the Fifth Circuit stated that a "RICO person must be one that either poses or has posed a continuous threat of engaging in the acts of racketeering." *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). Here, the testimony of Patrick Davis ("Davis") and James Bogers ("Bogers")—private investigators with MJB Group, LLC, a private investigation firm employed by Plaintiff—testified that their investigation resulted in evidence demonstrating fraudulent schemes created by Defendants in the past to defraud investors and creditors. Moreover, multiple lawsuits involving Defendants are pending regarding the same or similar schemes as those perpetrated on Plaintiff.[3] Based on such testimony and evidence, Defendants have posed a continuous threat of engaging in racketeering activities beginning as early as 2015 through 2017. Accordingly, Plaintiff demonstrated a substantial likelihood of success on the first element.

A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" includes mail and wire fraud. *See* 18 U.S.C. § 1961(1). Here, the testimony of Davis, Bogers, and Plaintiff, in addition to exhibits admitted into evidence, illustrate that Defendants engaged in numerous acts of wire fraud from 2016 through 2017. Specifically, Defendants transferred millions of dollars, which they received under the fraudulent pretense that

---

[3] *See Pro-Logistics Forwarding (PTY) Ltd. v. Robison Tire Co., Inc.*, No. 2:13–CV–83–KS–MTP (S.D. Miss); *Overland Ventures, LLC v. Giant Tyres USA, LL*, No. 2:14–cv–31–KS–MTP (S.D. Miss.)

4

such funds were for the purchase of "Off the Road" tires, using wires to various shell entities controlled by Defendants. Moreover, Defendants made these transfers without the knowledge and consent of Plaintiff. Such actions constitute wire fraud. *See* 18 U.S.C. § 1343. Accordingly, Plaintiff demonstrated a substantial likelihood of success on the second element.

Finally, the third element—connection to the acquisition, establishment, conduct or control of an enterprise. "An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan*, 319 F.3d at 229 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "The enterprise may be a legal entity or 'any group of individuals *associated in fact* although not a legal entity.'" *Id.* (emphasis in original) (quoting 18 U.S.C. § 1961(4)). "An association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009). Here, all entity Defendants—La Mia Bella Famigilia LP, Ho Provato LLC, Imaginomics LLC, Trident Lakes Property Holdings LLC, and Landash TX LLC—constitute legal entities.[4] Further, as the testimony and evidence demonstrate, the purpose of such entities was to fraudulently divert, through wire fraud, Plaintiff's invested funds. Accordingly, Plaintiff demonstrated a substantial likelihood of success on the third element.

Based on the above, in conjunction with Defendants failing to provide evidence in opposition, Plaintiff established a substantial likelihood of success on the merits of his RICO claim.

    **b. TUFTA**

Plaintiff alleges that Defendants violated, in pertinent part, § 24.005 of TUFTA. Germane to this case, § 24.005(a)(1) states that a transfer made by a debtor is fraudulent as to a creditor if

---

[4] Defendant John Eckerd acts as either a general partner or member of each Defendant entity.

the debtor made the transfer with the actual intent to hinder, delay, or defraud any creditor of the debtor. Here, the testimony of Bogers, Davis, and Plaintiff, in addition to the exhibits admitted into evidence, make clear that Defendants fraudulently transferred Plaintiff's invested funds to various entities controlled by Defendants with the intent to defraud Plaintiff. Accordingly, based on the above, in conjunction with Defendants failing to provide evidence in opposition, Plaintiff established a substantial likelihood of success on the merits of his TUFTA claim.

## II. Likelihood of Irreparable Harm

Plaintiffs must demonstrate they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600. However, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* An injunction is appropriate only if the anticipated injury is imminent and not speculative. *Winter*, 555 U.S. at 22.

Here, the testimony of Davis and Bogers, in addition to the exhibits admitted into evidence, make clear that injunctive relief is necessary to prevent irreparable harm. First, a large number of accounts used to transfer Plaintiff's money no longer possess such funds. Consequently, it is evident that if certain assets remain unidentified and Defendants are unrestrained any recoverable assets will rapidly disappear through transfers or other means of concealment. Moreover, Defendants' history, involving fraudulent schemes similar to the one here, demonstrates a pattern of concealing fraudulently diverted funds, thus making the risk and concern in this case well-founded. Additionally, Plaintiff seeks, in pertinent part, equitable remedies such as the imposition of a constructive trust. If injunctive relief is denied and Defendants dissipate the sought after funds, Plaintiff's equitable remedy is rendered moot. *See Janvey*, 647 F.3d at 601.

For the aforementioned reasons, in conjunction with Defendants failing to provide evidence in opposition, the Court finds that there is a substantial threat of irreparable injury if a preliminary injunction is not entered.

### III. Balance of Hardships

When deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). In other words, this element "involves an evaluation of the severity of the impact on defendant should the temporary injunction be granted and the hardship that would occur to plaintiff if the injunction should be denied." 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 2948.2 (3d ed. 2018).

Here, Plaintiff is seeking to prevent Defendants from, in pertinent part, concealing or transferring Plaintiff's or Defendants' property, whether real or personal, without obtaining consent from the Court. If Defendants transfer or dissipate Plaintiff's invested funds, Plaintiff effectively is left without a remedy. Likewise, if Defendants conceal or transfer property which resulted from diverting such funds, Plaintiff remains without an effective remedy. Granting an injunction pending the resolution of this case would not harm Defendants because the money and property sought to be restricted is traceable to Defendants' fraudulent scheme. As such, the Court finds that, in conjunction with Defendants failing to provide evidence in opposition to the aforementioned findings, this factor weighs in favor of granting an injunction.

### IV. The Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger*, 465 U.S. at 312). This factor overlaps substantially with the balance-

of-hardships requirement. *Id.* Here, granting a preliminary injunction will not disserve the public interest. As discussed above, Defendants maintain a reputation for implementing fraudulent schemes to defraud creditors and investors from millions of dollars.

As a result of Plaintiff satisfying all four elements, the Court finds that a preliminary injunction should be entered. However, before doing so the Court must first determine what amount, if any, is appropriate for a security.

## V. Security

Federal Rule of Civil Procedure 65(c) provides that the Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In determining the appropriate amount, the Court may elect to require no security at all. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996); *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 235 (S.D. Tex. 2011) (citing *EOG Resources, Inc. v. Beach*, 54 F. App'x 592 (5th Cir. 2002)).

Because Plaintiff is the victim of Defendants' fraudulent scheme, the Court will not require any security be posted.

## CONCLUSION

It is therefore **ORDERED** that Defendants, whether by themselves, or acting through any agent, employee, or co-conspirator, are preliminary enjoined from the following:

   a. Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of any of Plaintiff's or Defendants' property;
   b. Misrepresenting or refusing to disclose to Plaintiff or to the Court on proper request the existence, amount, or location of any property;
   c. Damaging or destroying tangible property of any Defendant;
   d. Tampering with the tangible property of any Defendant, including any documents, that represents or embodies anything of value, and/or causing

pecuniary loss to Plaintiff;

e. Selling, transferring, assigning, mortgaging, encumbering or in any manner alienating any of Plaintiff's or Defendants' property, whether real or personal, without obtaining the consent of Plaintiff and the Court;
f. Incurring indebtedness except as authorized by the Court;
g. Making withdrawals from any checking or savings account in any financial institution for any purpose except by authorized by the Court;
h. Spending any sum of cash for any purpose except as specifically authorized by the Court;
i. Withdrawing or borrowing in any manner for any purpose from any retirement, profit sharing, pension, disability, employee benefit plan, employee savings plan, individual retirement plan, or Keogh account;
j. Opening any new savings, checking, money market, or stock trading accounts with any bank, brokerage, or financial institution;
k. Purchasing, or otherwise acquiring any interest in real property without obtaining the consent of Plaintiff and the Court;
l. Purchasing or acquiring any chattel, including Off the Road Tires ("OTR Tires"), without obtaining consent of Plaintiff and the Court.
m. Engaging in any criminal act in violation of the penal laws of the United States of America and the State of Texas.

It is further **ORDERED** that this preliminary injunction shall take effect immediately and shall remain in effect pending trial in this action or further order of the Court.

**SIGNED this 11th day of July, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE